ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | C/A No.: 2024-CP-26-_____ |
| | ) | |
| -LOIS VASALKA, | ) | |
| | ) | |
| Plaintiff, | ) | **SUMMONS** |
| | ) | |
| v. | ) | |
| | ) | |
| BLUEGREEN VACATIONS UNLIMITED | ) | |
| INC, ANDREW NEVILLE, TYESHA | ) | |
| RAMSAY, LORI COLLEY, AND TROY | ) | |
| DOWLING, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**TO THE DEFENDANTS ABOVE NAMED**

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your answer to the Complaint to Plaintiff's attorney, Marybeth Mullaney, at the address below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, Plaintiff will apply to the Court for the relief demanded in the Complaint, including the rendering of judgment by default against you.

Respectfully submitted,

s/Marybeth Mullaney
Marybeth Mullaney (S.C. Bar #6685)
4900 O'Hear Ave Suite 100 & 200
North Charleston, South Carolina 29405
(843) 588-5587
marybeth@mullaneylaw.net
*Attorney for Plaintiff*

Date: February 14, 2024
Charleston, South Carolina

1

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | C/A No.: 2024-CP-26-_____ |
| | ) | |
| LOIS VASALKA, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | (*Jury Trial Requested*) |
| v. | ) | |
| | ) | |
| BLUEGREEN VACATIONS UNLIMITED | ) | |
| INC, ANDREW NEVILLE, TYESHA | ) | |
| RAMSAY, LORI COLLEY, AND TROY | ) | |
| DOWLING | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Lois Vasalka ("Plaintiff" or "Ms. Vasalka"), by way of this Complaint, brings the below claims against her former employers' Defendants, Bluegreen Vacations Unlimited Inc, ("Bluegreen"), Andrew Neville, ("Mr. Neville"), Tyesha Ramsay ("Ms. Ramsay"), Lori Colley ("Ms. Colley"), and Troy Dowling ("Mr. Dowling"), (collectively "Defendants") through her undersigned attorney, respectfully alleges unto this Honorable Court as follows:

## NATURE OF CLAIMS

1. Plaintiff brings claims against Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley, for Premise Liability, Respondeat Superior, Negligent Hiring, Negligent Retention, and Negligent Supervision.

2. Plaintiff brings claims against Mr. Dowling for Assault, Battery and Intentional Infliction of Emotional Distress. ("IIED").

## PARTIES AND JURISDICTION

3. Plaintiff is a resident of Horry County, South Carolina. At all times relevant to this complaint, she was employed by Bluegreen.

2

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

4.    Bluegreen is a for-profit South Carolina corporation, registered with the South Carolina Secretary of State and doing business in this state.

5.    Mr. Neville was an employee/agent of Bluegreen at all times relevant to this matter. Upon information and belief, Mr. Neville resides in Horry County, South Carolina.

6.    Ms. Ramsay was an employee/agent of Bluegreen at all times relevant to this matter. Upon information and belief, Ms. Ramsay resides in Boca Roton, Florida.

7.    Ms. Colley was an employee/agent of Bluegreen and Plaintiff's direct supervisor at all times relevant to this matter. Upon information and belief, Ms. Colley resides in Horry County, South Carolina.

8.    Mr. Dowling was an employee/agent of Bluegreen at all times relevant to this matter. Upon information and belief, Mr. Dowling resides in Horry County, South Carolina.

9.    At all times relevant herein, Bluegreen employed Plaintiff and numerous other employees to work on their behalf in providing labor for their financial benefit.

10.    Venue is proper in this judicial circuit because the Defendants have conducted substantial and continuous business in Horry County.

## FACTUAL ALLEGATIONS

11.    Bluegreen is a vacation ownership company based in Boca Raton, Florida. Bluegreen provides vacations at 60 company-managed resort on a time-share basis, with alternative resort and cruise options available through upselling and third-party exchanges. Bluegreen has approximately 4,500 employees.

12.    Mr. Dowling and Ms. Colley were Plaintiff's former Sales Managers for the preview center located 4451 N. Kings Hwy, Myrtle Beach, SC 29577.

3

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

13. Mr. Dowling and Ms. Colley had the authority to take tangible employment actions against Ms. Vasalka. They had the authority to make recommendations that could result in a significant change to her job. Their recommendations were given significant weight.

14. Mr. Neville is the Vice President of Sales. He is in-charge of the preview center located 4451 N. Kings Hwy, Myrtle Beach, SC 29577. Mr. Neville has the authority to hire, fire and discipline the employees at that location.

15. Ms. Ramsay is Vice President of Human Resource for Bluegreen. She is responsible for overseeing all sexual harassment investigations and make recommendations with respect to remedial measures that should be taken in response to these investigations. Her recommendations are given significant weight.

16. Ms. Vasalka was hired for the Front-Line Sale Position at 4451 N. Kings Hwy, Myrtle Beach, SC 29577. She was paid minimum wage of $7.25 plus commission.

17. Plaintiff was employed from April 2022 until her constructive termination in June 2023.

18. Plaintiff's primary job duties include being a front facing employee who assists customers with purchasing timeshares.

19. Her job duties included meeting with the customers and take them into the presentation room. After the presentation she would show them the properties and explain the packages that were available. Then the Sales Manager would meet the customer give them the price points. If the customer committed to the sale, then it was Plaintiff's job to complete the necessary paperwork.

20. Plaintiff met or exceeded Bluegreen's job expectations. Ms. Vasalka was qualified for the position of salesperson.

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

21.      In October of 2022, Ms. Vasalka was named representative of the month because she had the most sales.

22.      Throughout her employment Ms. Vasalka's sales were consistently in the top ten (10) out of over forty (40) representatives that worked at that location.

23.      Ms. Vasalka was successful saleswoman, who generated thousands of dollars in revenue for Bluegreen.

24.      Beginning in February of 2023, Plaintiff was subjected to constant unrelenting sexual harassment by Mr. Dowling.  His conduct was physically threatening, humiliating, and intimidating. Mr. Dowling conduct continued until Plaintiff was constructively terminated in June of 2023.

25.      Mr. Dowling would continuously approach her and whisper in her ear that he wanted to have sex her because his wife had not had sex with him in months.  He would say to her "c'mon we have time - it will only take 4 minutes".

26.      Ms. Vasalka would walk away and tell him to "knock it off" but he continued to do it.   Mr. Dowling walked up to Ms. Vasalka's at least 10 times while she was working and whispered in her ear that he wanted to have sex with her.

27.      He asked her if she wanted to see pictures of a car he trying to buy and then he showed her a picture of a naked woman. He did this on multiple occasions.

28.      Mr. Dowling would sit next Ms. Vasalka while she talking to customers, and he would drape his legs over hers underneath the table.

29.      Sometimes when she was sitting at a table talking to customers, he would sit beside her and put his arm around her.

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

30.    He also called Ms. Vasalka his "work wifey" in front of co-workers and customers. Whenever he sold a vacation package, he would say to customers, "you have me and Lois with you".

31.    Ms. Vasalka tried to stay away from Mr. Dowling.  If he came into the breakroom, she would leave and go to her car.

32.    On one occasion he trapped Ms. Vasalka at the managers' desk by putting his arms on either side of her so she couldn't get away and then rubbed his groin against her buttocks.

33.    Ms. Vasalka reported the above incidents to Ms. Colley.

34.    Ms. Vasalka also reported to Ms. Colley that she was sexually abused her father for many years and was diagnosed with severe PTSD.

35.    Ms. Vasalka also told Ms. Colley that due to Mr. Dowling's conduct, she was experiencing flashbacks, and that she was seeing her therapist more often and that she had to increase her medication.

36.    Ms. Vasalka asked Ms. Colley to please do something about it so that Mr. Dowling would leave her alone.

37.    Ms. Vasalka told Ms. Colley that she wanted to make a formal complaint against Mr. Dowling.

38.    Ms. Colley refused to report the matter to Human Resources.

39.    Ms. Colley responded by telling Ms. Vasalka that she was making too much of the situation and that Mr. Dowling acted this way to everyone, herself included.

40.    Ms. Colley told Ms. Vasalka this was typical behavior for Mr. Dowling and that she needed to put her big girl pants on and deal with it.

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

41.     Based upon Ms. Colley's response, Bluegreen was aware that Mr. Dowling had engaged in this type of behavior with other employees and presented a risk to Ms. Vasalka and others.

42.     Upon information and belief other employees had complained about Mr. Dowling prior to Ms., Vasalka.

43.     On March 31, 2023, several coworkers took Ms. Vasalka out for her 60th birthday. Mr. Dowling gave her a card telling her that he loved her and referred to her as his work wife.

44.      In April of 2023, Mr. Dowling asked Ms. Vasalka to open the cabins for the sales tours.

45.     This was not a task that Ms. Vasalka regularly performed. However, Mr. Dowling was her manager, so she did what he told her.

46.      Opening the cabins involved unlocking the doors and turning on all the lights in the cabin.

47.     When Ms. Vasalka was in the first cabin, Mr. Dowling came up behind her. Ms. Vasalka didn't hear him come in.  He grabbed her arm and started to pull her up the stairs towards the bedroom.

48.     Ms. Vasalka screamed loud for help and Mr. Dowling let go of her.  She was hysterically crying.

49.     Ms. Vasalka left the cabin and walked as quickly as she could to Mr. Neville's office.   Ms. Colley saw her walk into Mr. Neville's office upset and she followed Plaintiff into his office and asked Ms. Vasalka what was wrong.

50.     Ms. Vasalka said, "you know what wrong-this is all your fault this happened."

51.      Because Ms. Colley failed to take remedial measures when Ms. Vasalka initially reported Mr. Dowling, his conduct escalated to sexual assault.

7

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

52.     Ms. Vasalka then told Mr. Neville what Mr. Dowling had just done to her. She also told him about everything that happened in the past.

53.     Ms. Vasalka told Mr. Neville that she had previously reported Mr. Dowling to Ms. Colley and that she didn't do anything about it.

54.     Mr. Neville asked Ms. Vasalka if she wanted Mr. Dowling fired and she said yes.

55.     Mr. Neville and Ms. Colley attempted to cover up what happened by telling Ms. Vasalka that they would handle the matter "in-house" and that there was no need to get HR involved.

56.     Ms. Vasalka objected and insisted that they report the matter to HR. They argued with her for twenty minutes and said they wanted handle it in house. Ms. Vasalka told them no. She wanted them to file a report with HR. They finally agreed and told her they would get the report ready to send to HR.

57.     The next day Ms. Vasalka went Mr. Neville's office and asked if she needed to sign the report to HR. He said "no" it is not going to HR we are going to handle it "in-house". Ms. Vasalka told him that we agreed yesterday that he would file her complaint with HR. He said "no - you didn't you told me that you wanted to be in-house because you didn't want Troy fired".

58.     Ms. Vasalka told him that wasn't true that she specifically told him that she wanted it reported to HR and she did want Mr. Dowling fired.

59.     Mr. Neville was mad that Ms. Vasalka insisted that he report it to HR. He told Ms. Vasalka since she was sending it to HR that he wouldn't get involve. He told her that would have manager Bobby Terhart ("Mr. Terhart") fill out a report.

60.     Ms. Vasalka then met with Mr. Terhart. She asked if she could give him her written statement and he "no" that he would get the information from Mr. Neville.

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

61.     Ms. Vasalka had the next few days off per her usual schedule. The next time she went into work she saw that Mr. Dowling had been assigned to work with her.  She panicked because she was terrified of Mr. Dowling, and she didn't want to be near him, so she went to Greg Gadd ("Mr. Gadd") who works in the manager's pit.

62.     Ms. Vasalka had previously told Mr. Gadd what happened.  Mr. Gadd told her not worry. He fixed the assignments and assigned Ms. Vasalka to work with another Sales Manager.

63.     Later that same week, Ms. Vasalka saw that Mr. Dowling was assigned to her again so she went to Mr. Gadd and asked to be assigned to another Sales Manager.  Mr. Gadd told her he tried but Mr. Neville would allow him to reassign her to another Sales Manager.

64.     Ms. Vasalka went to Mr. Neville's office and asked him why he would not allow Mr. Gadd to assign her to another Sales Manager so she would not have to work with Mr. Dowling.

65.     Mr. Neville told Ms. Vasalka that he wasn't going to switch up the line-up just for her and that she had to work with Mr. Dowling.

66.     Mr. Neville knowingly and intentionally made a conscious effort to cause Plaintiff fear and anxiety in the workplace.

67.     Because Ms. Vasalka needed her job she worked with Mr. Dowling. Ms. Vasalka hoped that once the investigation was complete, she would no longer have to work with him.

68.      When Ms. Vasalka worked with Mr. Dowling, he mocked her.  He asked co-workers if I touch you, are you going to report it to HR? And then he would laugh.

69.     Mr. Dowling was allowed to manage Plaintiff's tables throughout the investigation. Bluegreen failed to take remedial measures to protect Plaintiff from Mr. Dowling.

70.     In fact, Mr. Dowling went out his way to work with Plaintiff more than normal in an effort to intimidate Plaintiff and Bluegreen encouraged this.

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

71.     HR Generalist Hector Carasquillo, Sr ("Mr. Carasquillo") called Plaintiff about her complaint on or about May 15, 2023.  The call was brief. He did not even ask her to tell him what happened when Mr. Dowling sexually assaulted me.

72.     Mr. Carasquillo only asked Plaintiff a few questions.  He said he would follow-up with her later.  Ms. Vasalka assume that he would call her again to get more information about what happened, but he never did.

73.     About a week after she spoke with Mr. Carasquillo, Ms. Ramsay came to the Myrtle Beach office unannounced.  She asked to meet with Ms. Vasalka.

74.     Plaintiff met with Ms. Ramsay. The meeting was brief.  Ms. Ramsay did not ask Ms. Vasalka about the sexual assault or about the sexual harassment she experienced at the hands of Mr. Dowling.

75.     Instead, Ms. Ramsay told Ms. Vasalka that she heard that Plaintiff gave co-workers gifts.  Then she accused Ms. Vasalka of trying to buy her co-workers.

76.     Ms. Vasalka told Ms. Ramsay that she was not trying to buy her co-workers and that she has given some of her coworkers' gifts at Christmas or for their birthdays.  The gifts Ms. Vasalka gave were appropriate for the occasion.

77.     Ms. Vasalka tried to tell Ms. Ramsay about happened with Mr. Dowling, but Ms. Ramsay would not let her speak.  Ms. Ramsay told Ms. Vasalka that she only wanted to discuss the gifts that Ms. Vasalka gave to co-workers.

78.     Several days after their meeting, Ms. Ramsay wrote a letter to Plaintiff stating, "I can tell you that appropriate action has been taken to ensure that inappropriate conduct does not occur in the future."

10

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

79.     Contrary to the letter, Bluegreen, Ms. Colley, Mr. Neville, Ms. Ramsay, did not take any measures to prevent the conduct from occurring in the future. Rather they forced Ms. Vasalka to continue to work closely with Mr. Dowling.

80.     Ms. Ramsay, Mr. Neville and Bluegreen did not take any disciplinary measures against Mr. Dowling for sexually assaulting Ms. Vasalka.

81.     Ms. Vasalka again asked Mr. Neville to reassign her to another Sales Manager. She told Mr. Neville that she feared Mr. Dowling, and she was suffering from extreme anxiety when she worked with him.

82.     Mr. Neville refused Plaintiff's request, even though this was something which could have easily been accomplished.

83.     Ms. Ramsay, Mr. Neville and Bluegreen intentionally forced Ms. Vasalka to work with Mr. Dowling knowing that it was causing her extreme emotional distress and anxiety in effort to force her quit.

84.     Ms. Vasalka had no choice but to resign because her physical and emotional health was declining as a result of being forced to work with her assailant.

85.     After Plaintiff resigned, Bluegreen employees Tara Lent and Tuesday Elizabeth reported being sexually harassed and inappropriately touched by Mr. Dowling. Only then did Bluegreen finally terminate Mr. Dowling.

86.     As a result of Mr. Dowling's actions, Plaintiff has suffered and continues to suffer from mental distress.

87.     Proximately and directly because of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, lost wages, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, attorneys' fees, and costs.

**FOR A FIRST CAUSE OF ACTION**

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

(PREMISE LIABILITY) (BLUEGREEN)

88.    Plaintiff incorporates all allegations above into this cause of action.

89.    Bluegreen owed a duty to warn Plaintiff to take safety precautions to warn of or eliminate unreasonable risks.

90.    Bluegreen breached this duty by continuing to employee and allowing Mr. Dowling to access the cabin and sexually assault Plaintiff.

91.    Bluegreen had a duty to exercise reasonable care to police the premises and other premises.

92.    As a result of the breach of duty, Plaintiff suffered mental distress which has manifested to physical injuries.

93.    That the Premise where the sexual assault occurred were the property to Bluegreen.

94.    That, Bluegreen knew, or should have known, that there were inadequate security precautions undertaken to act as a deterrent to individuals who may act in an inappropriate manner from coming onto the Premises, including by way of example and without limitation:

   a.   Inadequate or insufficient video surveillance cameras;

   b.   Inadequate or insufficient security measures or devices employed;

   c.   Inadequate design and/or layout of the Premises; and/or

   d.   Inadequate or insufficient security guards present.

95.    At all times relevant hereto, Bluegreen owed a duty to exercise reasonable care to prevent reasonably foreseeable injuries to their invitees, including Plaintiff, from being physically harmed, sexually assaulted, and/or injured.

96.    That, at all times relevant hereto, Bluegreen owed a duty to their invitees, including Plaintiff, to exercise reasonable care to ensure that adequate policies and procedures, whether

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

required by law or self-imposed, were in place and to ensure that all such policies and procedures were complied with appropriately.

97.     At all relevant times hereto, Bluegreen owed a duty of care to Plaintiff to:

    a.  Take appropriate measures so as to frustrate the actions of assailant, Mr. Dowling, and other similarly situated individuals in light of Bluegreens' decision to utilize cabins for its employees and customers.

    b.  Reasonably anticipate Mr. Dowlings' conduct or other such similar conduct by other similarly situated individuals on or about the Premises.

98.     That Bluegreen breached their duty of care to Plaintiff through their acts and/or omissions, which collectively, jointly, and severally constituted negligence and was a direct and proximate cause of Plaintiff's injuries.

99.     That, in addition to the aforementioned breaches of the duty of care, Bluegreen, in particular, breached their duty of care by failing to exercise reasonable or ordinary care in the following respects, which include, but are not limited to:

    a.  Failing to discover, prevent, or otherwise stop the actions of Mr. Dowling despite actual and constructive knowledge that the crime was about to occur or was likely to occur based on Plaintiff's previous complaints about Mr. Dowling as well as based on Mr. Dowlings 'predilections which were well known by Plaintiff's supervisor;

    b.  In failing to ensure adequate security remained on the Premises in order to break up or otherwise prevent any resulting altercations and/or to prevent criminal activity from occurring;

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

c.  In failing to inspect, patrol, monitor, or otherwise supervise the Premises and the patrons located thereupon, including Mr. Dowling;

d.  In otherwise acting in a negligent and/or reckless manner;

e.  In intentionally acting or failing to act with a willful and wanton disregard for the safety and lives of their patrons, including Plaintiff; and/or

100.    Proximately and directly as a result of Mr. Dowling's conduct, Plaintiff has suffered damages including, but not limited to, lost wages, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
(RESPONDEAT SUPERIOR) (BLUEGREEN)

101.    Plaintiff incorporates all allegations above into this cause of action.

102.    Mr. Dowling was an employee of BlueGreen.

103.    Mr. Dowling was performing the business of Bluegreen at the time of the assault.

104.    When Mr. Dowling sexually assaulted Plaintiff she was performing duties in furtherance of Bluegreen's business.

105.    While Mr. Dowling may have exceeded his authority when he sexually assaulted Plaintiff, he was acting within the scope of his employment at the time.

106.    Moreover, Plaintiff was acting within the scope of her employment when she was sexually assaulted by Mr. Dowling.

107.    Bluegreen is vicariously liable for the negligent and/or intentional actions of their agents, servants, and/or employees because, at all relevant times hereto, such agents, servants, and/or employees, were acting within the course and scope of their agency, service, and/or employment.

14

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

108.   That Bluegreen vicariously liable for the negligent and/or intentional actions of their agents, servants, and/or employees because, at all relevant times hereto, the actions or inactions such agents, servants, and/or employees were in furtherance of the Bluegreen's business.

109.   Plaintiff's injuries were a direct and proximate result of being assaulted by Mr. Dowling.

**FOR A THIRD AND FOURTH CAUSE OF ACTION**
(NEGLIGENT HIRING AND RETENTION)
(BLUEGREEN, MR. NEVILLE, MS. RAMSAY AND MS. COLLEY)

110.   Plaintiff incorporates all allegations above into this cause of action.

111.   Upon information and belief, Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley did not exercise reasonable care in hiring and subsequently retaining Mr. Dowling.

112.   The harm that occurred to Plaintiff was foreseeable considering the facts listed in the above paragraph.  Moreover, there was a nexus or similarity between the harm that occurred, and the facts listed above.

113.   Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley should have known that Mr. Dowling was a danger to Plaintiff based on Plaintiff's prior complaints.

114.   Upon information and belief, Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley were aware before they hired Dr. Dowling that he had engaged in type of conduct in the past with prior employers.

115.   Even if Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley were not aware he had engaged in this type of conduct in the past, they were aware that he presented a danger and threat to employees because of Ms. Vasalka's complaints to Ms. Colley and Mr. Neville as well as Ms. Colley's comments about Mr. Dowling.

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

116.    Had Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley exercised reasonable care over Dr. Dowling's hiring and/or retention Plaintiff would not have been subjected to the actions of Mr. Neville.

117.    As a result of Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley failure to exercise reasonable care as it relates to the hiring and retention of Mr. Dowling, Plaintiff suffered mental distress which has manifested further requiring continued therapy.

## FOR A FIFTH CAUSE OF ACTION
(NEGLIGENT SUPERVISION)
(BLUEGREEN, MR. NEVILLE, MS. RAMSAY AND MS. COLLEY)

118.    Plaintiff incorporates all allegations above into this cause of action.

119.    Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley failed to exercise control over Mr. Dowling.

120.    Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley knew or should have known that Mr. Dowling posed harm to Plaintiff for the reason's set forth above.

121.    Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley's repeated failure to supervise Mr. Dowling was willful, wanton, and recklessly disregards Plaintiff's rights.

122.    Mr. Dowling was acting in the interest of Bluegreen and its agents when he sexually assaulted Plaintiff.

123.    Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley knew or had reason to know that they had the ability to control Mr. Dowling.

124.    Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley knew or had reason to know of the necessity and opportunity for exercising control over Mr. Dowling.

125.    Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley failed to properly supervise Mr. Dowling by not disciplining him for sexually assaulting Plaintiff.

16

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

126. Due to Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley's failure to control Mr. Dowling he acted with impunity against Plaintiff.

127. Due to Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley's refusal to discipline Mr. Dowling for his action against Plaintiff, Mr. Dowling believed he was immune from punishment or injurious consequences for his actions. Consequently, he repeatedly sexually assaulted and harassed Plaintiff.

128. As a result of Defendants Bluegreen, Mr. Neville, Ms. Ramsay and Ms. Colley's inaction, Plaintiff has suffered mental distress which has manifested further requiring continued therapy.

## SIXITH CAUSE OF ACTION
### (ASSAULT)(MR. DOWLING)

129. Plaintiff incorporates all allegations above into this cause of action.

130. Mr. Dowling sexually assaulted Ms. Vasalka on numerous occasions.

131. Plaintiff was subjected to physical, emotional, psychological, mental, and verbal abuse by Mr. Dowling.

132. As a result, Plaintiff reasonably and justly feared being in the presence of Mr. Dowling.

133. Mr. Dowling's actions were willful, wanton, and reckless.

134. As a result of Mr. Dowling's actions, Plaintiff has suffered and continues to suffer from mental distress which has manifested further requiring continued therapy.

## FOR A SEVENTH CAUSE OF ACTION
### (BATTERY)(MR. DOWLING)

135. Plaintiff incorporates all allegations above into this cause of action.

17

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

136. Mr. Dowling forcibly touched Plaintiff's inappropriately repeatedly without her permission.

137. As a result of Mr. Dowling's actions, Plaintiff has suffered mental distress which has manifested further requiring continued therapy.

138. Mr. Dowling's actions were willful, wanton, and reckless.

### FOR AN EIGHTH CAUSE OF ACTION
**(**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) (MR. DOWLING)

139. Plaintiff incorporates all allegations above into this cause of action.

140. Mr. Dowling intentionally or recklessly inflicted severe emotional distress, or was certain, substantially certain, that such distress would result from his conduct.

141. As a result of Mr. Dowling's action, Plaintiff suffered and continues to suffer severe emotional distress.

142. Mr. Dowling's conduct was so extreme and outrageous that it exceeds all bounds of decency.

143. Mr. Dowling's conduct can reasonably be considered extreme, outrageous and utterly intolerable in a civilized society.

144. Mr. Dowling intentionally or recklessly inflicted severe emotional distress, that is certain, substantially certain, that such distress would result from their conduct.

145. Mr. Dowling has calculatedly and repeatedly inflicted suffering needlessly and contemptuously on Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, seeks judgment against the Defendants as follows:

A. Declaratory Judgment in favor of Plaintiff for all causes of action brought against Defendants in this matter;

18

ELECTRONICALLY FILED - 2024 Feb 14 2:22 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

B.    Judgment against Defendants for Plaintiff's emotional distress;

C.    Judgment against Defendants for Plaintiff's compensatory damages;

D.    Judgment against the Defendants for punitive damages;

E.    An award of the reasonable attorneys' fees and costs incurred by Plaintiff and;

F.    All applicable damages available for Plaintiff pursuant to the causes of action brought by Plaintiff; and`

G.    All such further relief as the Court deems just and equitable.


Respectfully submitted,

s/Marybeth Mullaney
Marybeth Mullaney (S.C. Bar #6685)
4900 O'Hear Ave Suite 100 & 200
North Charleston, South Carolina 29405
(843) 588-5587 Phone
marybeth@mullaneylaw.net

ATTORNEY FOR PLAINTIFF

Date: February 14, 2024
Charleston, South Carolina

19

ELECTRONICALLY FILED - 2024 Mar 19 2:07 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | C/A No.: 2024-CP-26-01093 |
| | ) | |
| LOIS VASALKA, | ) | |
| | ) | |
| Plaintiff, | ) | **ACCEPTANCE OF SERVICE** |
| | ) | |
| v. | ) | |
| | ) | |
| BLUEGREEN VACATIONS UNLIMITED, | ) | |
| INC., ANDREW NEVILLE, TYESHA | ) | |
| RAMSAY, LORI COLLEY, AND TROY | ) | |
| DOWLING, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Please take notice that the undersigned, as duly authorized attorney for Defendants Bluegreen Vacations Unlimited, Inc., Andrew Neville, Tyesha Ramsay, and Lori Colley, does hereby accept service of a copy of Plaintiff's Summons and Complaint, which was filed on February 14, 2024, on behalf of Defendants Bluegreen Vacations Unlimited, Inc., Andrew Neville, Tyesha Ramsay, and Lori Colley this 19th day of March, 2024.

Respectfully submitted,

J. Hagood Tighe
Fisher & Phillips LLP
1320 Main Street, Suite 750
Columbia, SC 29201
Phone: (803) 740-7655
Email: htighe@fisherphillips.com

**Attorney for Defendants Bluegreen Vacations Unlimited, Inc., Andrew Neville, Tyesha Ramsay, and Lori Colley**

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093



STATE OF SOUTH CAROLINA    )    IN COURT OF COMMON PLEAS
COUNTY OF HORRY             )    IN THE FIFTEENTH CIRCUIT
                                     )
LOIS VASALKA,               )    Case No: 2024-CP-26-01093
                                     )
          Plaintiff,          )    **SUMMONS**
                                     )
         v.                    )
                                     )
BLUEGREEN VACATIONS UNLIMITED )
INC, AND TROY DOWLING       )
,                                          )
                                     )
         Defendants.       )
_____ )

**TO THE DEFENDANTS ABOVE NAMED**

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your answer to the Complaint to Plaintiff's attorney, Marybeth Mullaney, at the address below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, Plaintiff will apply to the Court for the relief demanded in the Complaint, including the rendering of judgment by default against you.

Respectfully submitted,

s/Marybeth Mullaney
Marybeth Mullaney (S.C. Bar #6685)
4900 O'Hear Ave Suite 100 & 200
North Charleston, South Carolina 29405
(843) 588-5587
marybeth@mullaneylaw.net
*Attorney for Plaintiff*

Date: May 10, 2024
Charleston, South Carolina

1

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN COURT OF COMMON PLEAS |
| COUNTY OF HORRY | ) | IN THE FIFTEENTH CIRCUIT |
| | ) | |
| LOIS VASALKA, | ) | Case No.: 2024-CP-26-01093 |
| | ) | |
| Plaintiff, | ) | **FIRST AMENDED COMPLAINT** |
| | ) | (*Jury Trial Requested*) |
| v. | ) | |
| | ) | |
| BLUEGREEN VACATIONS UNLIMITED | ) | |
| INC, TROY DOWLING | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Lois Vasalka ("Plaintiff" or "Ms. Vasalka"), by way of this Complaint, brings the below claims against her former employers' Defendants, Bluegreen Vacations Unlimited Inc, ("Bluegreen"), and Troy Dowling ("Mr. Dowling"), (collectively "Defendants") through her undersigned attorney, respectfully alleges unto this Honorable Court as follows:

## NATURE OF CLAIMS

1.      Plaintiff brings claims against Bluegreen, for violations Title VII of the Civil Rights Act of 1964 (Title VII).

2.      Plaintiff brings claims against Mr. Dowling for Assault, Battery and Intentional Infliction of Emotional Distress. ("IIED").

## PARTIES AND JURISDICTION

3.      Plaintiff is a resident of Horry County, South Carolina. At all times relevant to this complaint, she was employed by Bluegreen.

4.      Bluegreen is a for-profit South Carolina corporation, registered with the South Carolina Secretary of State and doing business in this state.

2

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

5.     Mr. Dowling was an employee/agent of Bluegreen at all times relevant to this matter. Upon information and belief, Mr. Dowling resides in Horry County, South Carolina.

6.     At all times relevant herein, Bluegreen employed Plaintiff and numerous other employees to work on their behalf in providing labor for their financial benefit.

7.     Venue is proper in this judicial circuit because the Defendants have conducted substantial and continuous business in Horry County.

## FACTUAL ALLEGATIONS

8.     Bluegreen is a vacation ownership company based in Boca Raton, Florida. Bluegreen provides vacations at 60 company-managed resort on a time-share basis, with alternative resort and cruise options available through upselling and third-party exchanges. Bluegreen has approximately 4,500 employees.

9.     Ms. Vasalka was hired for the Front-Line Sale Position at 4451 N. Kings Hwy, Myrtle Beach, SC 29577.   She was paid minimum wage of $7.25 plus commission.

10.     Ms. Vasalka was employed from April 2022 until her constructive termination in June 2023.

11.     Plaintiff's primary job duties include being a front facing employee who assists customers with purchasing timeshares.

12.     Her job duties included meeting with the customers and take them into the presentation room. After the presentation she would show them the properties and explain the packages that were available. Then the Sales Manager would meet the customer give them the price points. If the customer committed to the sale, then it was Plaintiff's job to complete the necessary paperwork.

3

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

13. Troy Dowling ("Mr. Dowling") was Plaintiff's former Sales Managers. Mr. Dowling was Plaintiff's supervisor. He had the authority to take tangible employment action against Plaintiff.

14. Lori Colley was Plaintiff's direct supervisor. She had the authority to take tangible employment action against Plaintiff.

15. Mr. Dowling and Ms. Colley had the authority to make recommendations that could result in a significant change to Plaintiff's job. Their recommendations were given significant weight.

16. Plaintiff met or exceeded Bluegreen's job expectations. Ms. Vasalka was qualified for the position of salesperson.

17. In October of 2022, Ms. Vasalka was named representative of the month because she had the most sales.

18. Throughout her employment Ms. Vasalka's sales were consistently in the top ten (10) out of over forty (40) representatives that worked at that location.

19. Ms. Vasalka was successful saleswoman, who generated thousands of dollars in revenue for Bluegreen.

20. Beginning in February of 2023, Plaintiff was subjected to constant unrelenting sexual harassment by Mr. Dowling. His conduct was physically threatening, humiliating, and intimidating. Mr. Dowling conduct continued until Plaintiff was constructively terminated in June of 2023.

21. Mr. Dowling would continuously approach Ms. Vasalka and whisper in her ear that he wanted to have sex her because his wife had not had sex with him in months. He would say to her "c'mon we have time - it will only take 4 minutes".

4

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

22.    Ms. Vasalka would walk away and tell him to "knock it off" but he continued to do it.    Mr. Dowling walked up to Ms. Vasalka's at least 10 times while she was working and whispered in her ear that he wanted to have sex with her.

23.    Mr. Dowling asked her if she wanted to see pictures of a car he trying to buy and then he showed her a picture of a naked woman. He did this on multiple occasions.

24.    Mr. Dowling would sit next Ms. Vasalka while she talking to customers, and he would drape his legs over hers underneath the table.

25.    Sometimes when Ms. Vasalka was sitting at a table talking to customers, he would sit beside her and put his arm around her.

26.    He also called Ms. Vasalka his "work wifey" in front of co-workers and customers. Whenever he sold a vacation package, he would say to customers, "you have me and Lois with you".

27.    Ms. Vasalka tried to stay away from Mr. Dowling.  If he came into the breakroom, she would leave and go to her car.

28.    On one occasion he trapped Ms. Vasalka at the managers' desk by putting his arms on either side of her so she couldn't get away and then rubbed his groin against her buttocks.

29.    Ms. Vasalka reported the above incidents to Ms. Colley.

30.    Ms. Vasalka also reported to Ms. Colley that she was sexually abused her father for many years and was diagnosed with severe PTSD.

31.    Ms. Vasalka also told Ms. Colley that due to Mr. Dowling's conduct, she was experiencing flashbacks, and that she was seeing her therapist more often and that she had to increase her medication.

32.    Ms. Vasalka asked Ms. Colley to please do something about it so that Mr. Dowling would leave her alone.

5

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

33.     Ms. Vasalka told Ms. Colley that she wanted to make a formal complaint against Mr. Dowling.

34.     Ms. Colley refused to report the matter to Human Resources.

35.     Ms. Colley responded by telling Ms. Vasalka that she was making too much of the situation and that Mr. Dowling acted this way to everyone, herself included.

36.     Ms. Colley told Ms. Vasalka this was typical behavior for Mr. Dowling and that she needed to put her big girl pants on and deal with it.

37.     Ms. Colley was aware that other female employees had complained about Mr. Dowling prior to Ms. Vasalka.

38.     On March 31, 2023, several coworkers took Ms. Vasalka out for her 60th birthday. Mr. Dowling gave her a card and an experience gift.  In the card he told her that he loved her and referred to her as his work wife.

39.     In April of 2023, Mr. Dowling asked Ms. Vasalka to open the cabins for the sales tours.

40.     This was not a task that Ms. Vasalka regularly performed. However, Mr. Dowling was her manager, so she did what he told her.

41.     Opening the cabins involved unlocking the doors and turning on all the lights in the cabin.

42.     When Ms. Vasalka was in the first cabin, Mr. Dowling came up behind her. Ms. Vasalka didn't hear him come in.  He grabbed her arm and violently pull her up the stairs to the bedroom.  Ms. Vasalka was terrified as she believed that Mr. Dowling was dragging her into to the bedroom to force her to have sex with him.

43.     Ms. Vasalka screamed loud for help and Mr. Dowling let go of her.  She was hysterically crying.

6

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

44.    Ms. Vasalka left the cabin and walked as quickly as she could into Andrew Neville's office. (Mr. Neville") Mr. Neville was the Vice President of Sales. He was in-charge of the preview center located 4451 N. Kings Hwy, Myrtle Beach, SC 29577.

45.    Ms. Colley saw her walk into Mr. Neville's office upset and she followed Plaintiff into his office and asked Ms. Vasalka what was wrong.

46.    Ms. Vasalka said, "you know what wrong-this is all your fault this happened."

47.    Ms. Vasalka said this to Ms. Colley because she failed to take remedial measures when Ms. Vasalka initially reported Mr. Dowling.

48.    As a result of Ms. Colley failure to take remedial measures Mr. Dowlings' conduct escalated to an attempted sexual assault.

49.    Ms. Vasalka then told Mr. Neville what Mr. Dowling had just done to her. She also told him about everything that happened in the past.

50.    Ms. Vasalka told Mr. Neville that she had previously reported Mr. Dowling to Ms. Colley and that she didn't do anything about it.

51.    Mr. Neville asked Ms. Vasalka if she wanted Mr. Dowling fired and she said yes.

52.    Mr. Neville and Ms. Colley attempted to cover up what happened by telling Ms. Vasalka that they would handle the matter "in-house" and that there was no need to get HR involved.

53.    Ms. Vasalka objected and insisted that they report the matter to HR. They argued with her for twenty minutes and said they wanted handle it "in-house". Ms. Vasalka told them no. She wanted them to file a report with HR. They finally agreed and told her they would get the report ready to send to HR.

54.    The next day Ms. Vasalka went Mr. Neville's office and asked if she needed to sign the report to HR. He said "no" it is not going to HR we are going to handle it "in-house". Ms.

7

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

Vasalka told him that we agreed yesterday that he would file her complaint with HR. He said "no - you didn't you told me that you wanted to be in-house because you didn't want Troy fired".

55.    Ms. Vasalka told him that wasn't true that she specifically told him that she wanted it reported to HR and she did want Mr. Dowling fired.

56.    Mr. Neville was mad that Ms. Vasalka insisted that he report it to HR.  He told Ms. Vasalka since she was sending it to HR that he wouldn't get involve. He told her that would have manager Bobby Terhart ("Mr. Terhart") fill out a report.

57.    Ms. Vasalka then met with Mr. Terhart. She asked if she could give him her written statement and he "no" that he would get the information from Mr. Neville.

58.    Ms. Vasalka had the next few days off per her usual schedule. The next time she went into work she saw that Mr. Dowling had been assigned to work with her.  She panicked because she was terrified of Mr. Dowling, and she didn't want to be near him, so she went to Greg Gadd ("Mr. Gadd") who works in the manager's pit.

59.    Ms. Vasalka had previously told Mr. Gadd what happened.  Mr. Gadd told her not worry. He fixed the assignments and assigned Ms. Vasalka to work with another Sales Manager.

60.    Mr. Gadd was easily able to arrange the schedule so that Ms. Vasalka did not have to work with Mr. Dowling.

61.    Later that same week, Ms. Vasalka saw that Mr. Dowling was assigned to her again so she went to Mr. Gadd and asked to be assigned to another Sales Manager.  Mr. Gadd told her he tried but Mr. Neville specially told him that he had to assign Ms. Vasalka to work with Mr. Dowling.

62.    Ms. Vasalka went to Mr. Neville's office and asked him why he would not allow Mr. Gadd to assign her to another Sales Manager so she would not have to work with Mr. Dowling.

8

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

63.    Mr. Neville told Ms. Vasalka that he wasn't going to switch up the line-up just for her and that she had to work with Mr. Dowling.

64.    Mr. Neville's actions of taking measures to ensure Ms. Vasalka had to work with Mr. Dowling were retaliatory.

65.    Mr. Neville failed to take remedial measures and he knowingly and intentionally made a conscious effort to cause Plaintiff fear and anxiety in the workplace.

66.    By forcing Plaintiff to work with Mr. Dowling, Mr. Neville falsely insinuated to Plaintiff, Mr. Gadd, and her other co-workers that Plaintiff's complaints against Mr. Dowling were false.

67.    Because Ms. Vasalka needed her job she worked with Mr. Dowling. Ms. Vasalka hoped that once the investigation was complete, she would no longer have to work with him.

68.    When Ms. Vasalka worked with Mr. Dowling, he ridiculed her for reporting him to HR.  Mr. Dowling made these comments in front her co-workers.

69.    Mr. Dowling, asked co-workers if I touch you, are you going to report me to HR? And then he would laugh.

70.    Mr. Neville forced Ms. Vasalka to work with Mr. Dowling more than she worked with him before she filed her complaint.

71.    Mr. Dowling was allowed to work Plaintiff's tables throughout the investigation. Bluegreen failed to take remedial measures to protect Plaintiff from Mr. Dowling.

72.    Mr. Dowling went out of his way to be near Ms. Vasalka to intimidated and scared her.

73.    Plaintiff felt intimidated and scared to work with Mr. Dowling.

9

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

74.     HR Generalist Hector Carasquillo, Sr ("Mr. Carasquillo") called Plaintiff about her complaint on or about May 15, 2023.  The call was brief. He did not even ask her to tell him what happened when Mr. Dowling sexually assaulted her.

75.      Mr. Carasquillo only asked Plaintiff a few questions.  He said he would follow-up with her later.  Ms. Vasalka assume that he would call her again to get more information about what happened, but he never did.

76.     About a week after she spoke with Mr. Carasquillo, Tyesha Ramsay the Vice President of Human Resource for Bluegreen who responsible for overseeing all sexual harassment investigations came to the Myrtle Beach office unannounced to investigate Plaintiff's complaint against Mr. Dowling.

77.     Ms. Ramsay's met with Plaintiff for less than 10 minutes. Ms. Ramsay did not make reasonable inquiries to ascertain the truth regarding Ms. Vasalka's report that she was sexually harassed and sexually assaulted by Mr. Dowling.

78.     Instead, Ms. Ramsay asked Ms. Vasalka about gifts she had given to co-workers. Ms. Ramsay falsely insinuated Ms. Vasalka bribed her co-workers with gifts so that they would corroborate her account.

79.     Ms. Vasalka told Ms. Ramsay that she had only given some of her coworkers' small thoughtful gifts at Christmas or for their birthdays.  The gifts Ms. Vasalka gave were appropriate for the occasion.

80.     Ms. Vasalka tried to tell Ms. Ramsay about happened with Mr. Dowling, but Ms. Ramsay would not let her speak.

81.     Ms. Vasalka told Ms. Ramsay that she did not want to work Mr. Dowling because she was scared, he would assault her again.

10

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

82.     Ms. Ramsey told Ms. Vasalka that she only wanted to discuss the gifts that Ms. Vasalka gave to co-workers, and she kept cutting Plaintiff off when Plaintiff tried to tell her what happened.

83.     Ms. Ramsay told Plaintiff that she could not corroborate Plaintiff's complaint and that Plaintiff would be getting an outcome letter and she left abruptly.

84.     Several days after their meeting, Ms. Ramsay wrote a letter to Plaintiff stating, "*Although we could not confirm all of your allegations, I can tell you that appropriate action has been taken to ensure that inappropriate conduct does not occur in the future*."

85.     After she received the letter Plaintiff spoke with Mr. Neville and asked if anything could be done so that she would no longer have to work with Mr. Dowling.

86.     He told her that HR was handling the matter and there was nothing that could be done.

87.     It caused Plaintiff severe anxiety and mental distress to have to work with Mr. Dowling.

88.     Contrary to the letter, Bluegreen, Ms. Colley, Mr. Neville, Ms. Ramsay, did not take any measures to prevent the conduct from occurring in the future.  Rather they forced Ms. Vasalka to continue to work closely with Mr. Dowling.

89.     Neither Ms. Ramsay, Mr. Neville and Bluegreen did not take any disciplinary measures against Mr. Dowling for sexually assaulting Ms. Vasalka.

90.     Ms. Vasalka again asked Mr. Neville to reassign her to another Sales Manager. She told Mr. Neville that she feared Mr. Dowling, and she was suffering from extreme anxiety when she worked with him.

91.     Mr. Neville refused Plaintiff's request, even though this was something which could have easily been accomplished.

11

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

92.    Ms. Ramsay, Mr. Neville and Bluegreen intentionally forced Ms. Vasalka to work with Mr. Dowling knowing that it was causing her extreme emotional distress and anxiety in effort to force her quit.

93.    Ms. Vasalka told Mr. Neville she could not work under these conditions and she had no choice but to resignbecause her physical and emotional health was declining as a result of being forced to work with her assailant.

94.    After Plaintiff resigned, Bluegreen employees Tara Lent and Tuesday Elizabeth reported being sexually harassed and inappropriately touched by Mr. Dowling. Only then did Bluegreen finally terminate Mr. Dowling.

95.    As a result of Mr. Dowling's actions, Plaintiff has suffered and continues to suffer from mental distress.

96.    Proximately and directly because of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, lost wages, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, attorneys' fees, and costs.

97.    Bluegreen acted with malice reckless indifference of Plaintiff's federal rights under Title VII.

**FOR A FIRST AND SECOND CAUSE OF ACTION**
Violation of Title VII
(Hostile Work Environment and Retaliation)
(Defendant Bluegreen)

98.    Plaintiff incorporates all allegations above into this cause of action.

99.    Defendant, at all times relevant hereto had actual and constructive knowledge of the conduct described herein.

100.    Mr. Dowling's actions and statements towards Plaintiff were unwelcome.

101.    Mr. Dowling's actions and statements were based on Plaintiff's sex.

12

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

102.    Mr. Dowling, actions and statements were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work environment.

103.    Mr. Dowling's actions and statements are imputable to Dedendant because they occurred in plain view of other managers, supervisors and co-workers.

104.    Plaintiff engaged in a protected activity by complaining to Mr. Neville. A few weeks after Plaintiff complained he was terminated.

105.    At all times during his employment, Plaintiff satisfactorily performed his job.

106.    Bluegreen took an adverse employment action against Plaintiff by constructively terminating her.

107.    Plaintiff reported Mr. Dowling's misconduct and no action was taken by Bluegreen against Mr. Dowling.

108.    Bluegreen retaliated against Plaintiff for her report by attempting to embarrass her during their so called investigation into her complaint and by forcing her to work more frequently with her harasser.

109.    As a direct result of the Bluegreen violations of Title VII, Plaintiff has suffered extreme emotional and physical injury that has proximately caused damages to Plaintiff, in an amount in excess of that which may be recovered under Title VII.

110.    Mr. Dowling was Plaintiff's manager therefore Bluegreen is strictly liable. The Defendant violated Title VII by failing to adequately supervise, control, or discipline and/or otherwise penalize its managers' conduct and by its failure to act.

111.    Defendant failed to take all reasonable steps to protect Plaintiff.

112.    Defendant have allowed Plaintiff's harasser to intimate and frighten Plaintiff and it did not take remedial measures to protect her.

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

113. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered and is continuing to suffer mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

114. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been compelled to retain the services of counsel to enforce the terms and conditions of the employment relationship and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. § 2000e-5(k).

115. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for Plaintiff's federal rights, therefore, Plaintiff is entitled to recover punitive damages.

116. Because of Defendant's actions, Plaintiff has suffered loss of income along with other actual damages.

117. As a direct and proximate result of the Defendant's willful inactions, the Plaintiff has been damaged in that she lost wages and incurred additional expenses, costs, and attorney's fees as well as experienced mental anguish and trauma, in such amount as to be determined at trial.

118. The false information, contained in the letter Plaintiff's reputation in the employment in the law enforcement community.

**FOR A FOURTH CAUSE OF ACTION**
(Assault)(Mr. Dowling)

119. Plaintiff incorporates all allegations above into this cause of action.

120. Mr. Dowling sexually assaulted Ms. Vasalka on numerous occasions.

121. Plaintiff was subjected to physical, emotional, psychological, mental, and verbal abuse by Mr. Dowling.

14

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

122.    As a result, Plaintiff reasonably and justly feared being in the presence of Mr. Dowling.

123.    Mr. Dowling's actions were willful, wanton, and reckless.

124.    As a result of Mr. Dowling's actions, Plaintiff has suffered and continues to suffer from mental distress which has manifested further requiring continued therapy.

## FOR A THIRD CAUSE OF ACTION
### (BATTERY)(MR. DOWLING)

125.    Plaintiff incorporates all allegations above into this cause of action.

126.    Mr. Dowling forcibly touched Plaintiff's inappropriately repeatedly without her permission.

127.    As a result of Mr. Dowling's actions, Plaintiff has suffered mental distress which has manifested further requiring continued therapy.

128.    Mr. Dowling's actions were willful, wanton, and reckless.

## FOR AN FOURTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) (MR. DOWLING)

129.    Plaintiff incorporates all allegations above into this cause of action.

130.    Mr. Dowling intentionally or recklessly inflicted severe emotional distress, or was certain, substantially certain, that such distress would result from his conduct.

131.    As a result of Mr. Dowling's action, Plaintiff suffered and continues to suffer severe emotional distress.

132.    Mr. Dowling's conduct was so extreme and outrageous that it exceeds all bounds of decency.

133.    Mr. Dowling's conduct can reasonably be considered extreme, outrageous and utterly intolerable in a civilized society.

15

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

134.    Mr. Dowling intentionally or recklessly inflicted severe emotional distress, that is certain, substantially certain, that such distress would result from their conduct.

135.    Mr. Dowling has calculatedly and repeatedly inflicted suffering needlessly and contemptuously on Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, seeks judgment against the Defendants as follows:

A.    Declaratory Judgment in favor of Plaintiff for all causes of action brought against Defendants in this matter;

B.    Declaratory Judgement that Defendant acted with malice or reckless indifference to the Plaintiff's federally protected rights under Title VII;

C.    Judgment against Defendants for Plaintiff's emotional distress;

D.    Judgment against Defendants for Plaintiff's compensatory damages;

E.    Judgment against the Defendants for punitive damages;

F.    An award of the reasonable attorneys' fees and costs incurred by Plaintiff;

G.    Plaintiff be awarded compensatory damages for any pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

H.    All applicable damages available for Plaintiff pursuant to the causes of action brought by Plaintiff; and`

I.    All such further relief as the Court deems just and equitable.

[signature page to follow]

16

Respectfully submitted,

s/Marybeth Mullaney
Marybeth Mullaney (S.C. Bar #6685)
4900 O'Hear Ave Suite 100 & 200
North Charleston, South Carolina 29405
(843) 588-5587 Phone
marybeth@mullaneylaw.net

ATTORNEY FOR PLAINTIFF

Date: May 10, 2024
Charleston, South Carolina

ELECTRONICALLY FILED - 2024 May 10 2:23 PM - HORRY - COMMON PLEAS - CASE#2024CP2601093

17

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | C/A No.: 2024-CP-26-01093 |
| | ) | |
| LOIS VASALKA, | ) | |
| | ) | |
| Plaintiff, | ) | **ACCEPTANCE OF SERVICE** |
| | ) | |
| v. | ) | |
| | ) | |
| BLUEGREEN VACATIONS UNLIMITED, | ) | |
| INC., AND TROY DOWLING, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Please take notice that the undersigned, as duly authorized attorney for Defendant Bluegreen Vacations Unlimited, Inc. does hereby accept service of a copy of Plaintiff's Summons and First Amended Complaint, which was filed on May 10, 2024, on behalf of Defendant Bluegreen Vacations Unlimited, Inc., this 23rd day of May, 2024.

Respectfully submitted,

_____

J. Hagood Tighe
Fisher & Phillips LLP
1320 Main Street, Suite 750
Columbia, SC 29201
Phone: (803) 740-7655
Email: htighe@fisherphillips.com

**Attorney for Defendant Bluegreen Vacations Unlimited, Inc.**